W. B. COPPERSMITH & SONS, INC., AND N. F. EURE v. ÆTNA INSURANCE COMPANY, HARTFORD, CONN., THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONN., ET AL.

(Filed 23 September, 1942.)

**1. Insurance § 44—**

Plaintiff having taken out a fire and marine insurance policy on his boat, which policy contained a clause providing for a $1,000.00 deduction from the total of any and all claims covered, a nonsuit was properly granted where it appeared that the boat suffered only $890.00 damage, plaintiffs' contention that the deductible clause was inserted in the policy by mutual mistake being untenable, since all the evidence shows that there was no mistake on the part of the defendants in issuing the policy, and that plaintiff had full opportunity to read the policy and ascertain the facts but failed so to do.

**2. Contracts § 12—**

In an action for reformation it must be alleged and shown, by evidence clear, strong and convincing, that the instrument sought to be corrected failed to express the true agreement of the parties, because of a mistake common to *both parties,* or because of the mistake of one party induced by the fraud or inequitable conduct of the other party, and that by reason of ignorance, mistake, fraud, or undue advantage something material has been inserted, or omitted, contrary to such agreement and the intention of the parties.

**3. Contracts § 6—**

A contractor must stand by the words of his contract and if he will not read it, he alone is responsible for his omission.

**4. Same—**

The signing of a written contract is not necessarily essential to its validity. It is equally efficacious if a written contract is prepared by one party and delivered to the other party, and acquiesced in by the latter without objection.

**5. Equity § 2—**

Equity will not afford relief to those who sleep on their rights, or whose condition is traceable to that want of diligence which may fairly be expected of a reasonable and prudent man.

APPEAL by plaintiffs from *Williams, J.,* at March Term, 1942, of PASQUOTANK.

This is an action instituted by the plaintiffs upon a fire and marine insurance policy issued by The Tugboat Underwriting Syndicate, composed of the sixteen insurance companies named as defendants therein. The policy in suit was written on the tug "Eureka" to cover the period from 15 July, 1940, to 15 July, 1941, and was for the sum of $8,000.00, loss, if any, payable to N. F. Eure, and contained, *inter alia,* the provision: "From the total amount of any and all claims covered here under . . . resulting from one casualty, the sum of $1,000.00 shall be deducted."

On 4 August, 1940, the tug "Eureka" sustained fire damage to her hull in the amount of $890.00. Claim was made by the plaintiffs upon the defendants for payment of this amount, which claim the defendants denied. Whereupon the plaintiffs instituted this action.

From a judgment as in case of nonsuit, upon defendants' demurrer to the evidence under C. S., 567, the plaintiffs appealed, assigning as error the court's action in sustaining the defendants' motion to dismiss and entering judgment accordingly.

*R. Clarence Dozier for plaintiffs, appellants.*
*Worth & Horner for defendants, appellees.*

SCHENCK, J. Since the policy in suit contained an unlimited one thousand dollar deductible clause, and since the loss in suit was only $890.00, it follows, nothing else appearing, that the action cannot be maintained.

However, the plaintiffs by an amendment to the original complaint seek to reform the policy to conform to what they allege was the policy actually purchased by the plaintiffs by striking therefrom the clause providing for $1,000 deductible in so far as it related to loss by fire, which said clause they allege was inserted in said policy (1) through mistake or inadvertence of the draftsman or scrivener, or (2) by mutual mistake of the parties, or (3) on account of mistake of the plaintiffs and fraud of the defendants.

There is no evidence in the record of either a mistake of the scrivener or of fraud of the defendants.

As to the allegation that the $1,000 deductible clause was made applicable to loss by fire through mutual mistake of the plaintiffs and the defendants, all of the evidence tends to show that the policy in suit was obtained for the plaintiffs from the defendants upon request of the plaintiffs by an application therefor on behalf of the plaintiffs made by one Dal H. Williams, who conducted a general insurance business in Elizabeth City, N. C., to insurance brokers in New York City, and that said application contained a $1,000 deductible clause, with no exception therefrom for loss by fire; and that the policy was issued by the defendants in accord with such application, including an unlimited $1,000 deductible clause. There is no evidence that such a clause was inserted in the policy by reason of any mistake on the part of the defendants. On the contrary, all the evidence tends to show that the policy was issued by the defendants in accord with the application made to it by the plaintiffs, through Williams. So even if it be conceded that the plaintiffs were mistaken as to the provision of the policy that the $1,000 deductible clause was limited to loss by collision, stranding and sinking, and loss by fire was excluded therefrom, there was still the lack of mutual mistake necessary for the plaintiffs to maintain their action. "In an action for reformation it must be alleged and shown, by evidence clear, strong and convincing, that the instrument sought to be corrected failed to express the true agreement of the parties, because of a mistake common to *both parties,* or because of the mistake of one party induced by the fraud or inequitable conduct of the other party, and that by reason of ignorance, mistake, fraud, or undue advantage something material has been inserted, or omitted, contrary to such agreement and the intention of the parties." *Ricks v. Brooks,* 179 N. C., 204, 102 S. E., 207.

A further reason appears from the record why the plaintiffs cannot maintain their alleged cause of action for reformation of the policy.

All of the evidence tends to show that the plaintiffs are intelligent, experienced and educated businessmen and that the policy in suit was sent by the defendants to Williams at Elizabeth City, and was received and held by him with the knowledge and consent of the plaintiffs, and notwithstanding the fact that the policy was held by Williams from soon after 15 July, 1940, till after the fire on 4 August, 1940, and during this time the plaintiffs had free and full opportunity to read the policy and discover its contents, and if found not in accord with their understanding to have had it rewritten or to have declined to accept it, but failed to avail themselves of this opportunity. Equity will not afford relief to those who sleep upon their rights, or whose condition is traceable to that want of diligence which may fairly be expected from a reasonable and prudent man. *Clements v. Ins. Co.,* 155 N. C., 57, 70 S. E., 1076.

In speaking of the effect of the failure of one to read a contract from which he seeks to be relieved the Supreme Court of the United States says: "It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." *Upton v. Tribilcock,* 91 U. S., 45, 23 L. Ed., 203, and authorities there cited. The signing of a written contract is not necessarily essential to its validity. It is equally efficacious if a written contract is prepared by one party and delivered to the other party, and acquiesced in by the latter without objection.

The judgment of the Superior Court is

Affirmed.